IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Ronald James McMurphy,<br><br>Petitioner,<br><br>v.<br><br>Warden, FCI Bennettsville Camp,<br><br>Respondent. | Civil Action No. 4:25-cv-13296-JD<br><br>ORDER AND OPINION |

This matter is before the Court on the Report and Recommendation (DE 6) of United States Magistrate Judge Thomas E. Rogers, III, concerning Ronald James McMurphy's petition for a writ of habeas corpus under 28 U.S.C. § 2241 (DE 1), and Petitioner's objections (DE 9). The Report recommends dismissal without prejudice for failure to exhaust administrative remedies. Since the Report was issued, the Bureau of Prisons ("BOP") Inmate Locator has identified Petitioner as no longer in BOP custody. For the reasons below, the Court adopts the recommended dismissal without prejudice but resolves the petition on mootness grounds rather than exhaustion.

## I. BACKGROUND

Petitioner filed this action on November 5, 2025, while confined at FCI Bennettsville Camp. He alleged that the BOP failed to calculate and apply earned time credits under the First Step Act ("FSA"), 18 U.S.C. § 3632(d)(4), and improperly limited his eligibility for community placement under the Second Chance Act, 18 U.S.C. § 3624(c). (DE 1 at 1-5.) He sought an order recalculating his credits and

sentence dates, reflecting a projected release date of February 21, 2026, and a community-custody eligibility date of December 29, 2025, and directing his transfer to home confinement or a residential reentry center. (Id. at 5-6.) Petitioner also stated that his sentencing court in the Middle District of North Carolina imposed an eighteen-month prison term followed by three years of supervised release. (Id. at 2-3.)

On November 7, 2025, the Magistrate Judge recommended summary dismissal, without prejudice and without requiring a return, because Petitioner had not completed the BOP administrative review process. (DE 6 at 2–6.) Petitioner timely objected, disputing the Report's characterization of exhaustion as jurisdictional, asserting that BOP nonresponses made administrative relief unavailable, and challenging the treatment of his time-credit and community-placement requests. (DE 9.)

An intervening development controls the disposition. The BOP's official Inmate Locator identifies Petitioner by name and register number and states: "Not in BOP Custody as of: 04/24/2026." BOP Inmate Locator, https://www.bop.gov/inmateloc/ (search Register No. 34030-511; printout dated Oct. 14, 2026). The Court takes judicial notice of that publicly reported agency record solely to determine Petitioner's BOP custody status. See Fed. R. Evid. 201(b)(2), (c)(1). The entry does not establish that Petitioner has completed any court-imposed term of supervised release, and the Court makes no such finding.

.

## II. STANDARD OF REVIEW

A magistrate judge's recommendation has no presumptive weight. After specific objections, the district court reviews the challenged portions de novo and may accept, reject, or modify the recommendation. 28 U.S.C. § 636(b)(1); Elijah v. Dunbar, 66 F.4th 454, 459-61 (4th Cir. 2023). Petitioner's pro se pleadings are construed liberally. Erickson v. Pardus, 551 U.S. 89, 94 (2007).

Article III requires a live case or controversy throughout the litigation. A case becomes moot when intervening events make it impossible for the Court to grant any effectual relief to the prevailing party. United States v. Ketter, 908 F.3d 61, 65 (4th Cir. 2018); Benson v. Warden FCI Edgefield, 174 F.4th 348, 353–55 (4th Cir. 2026). Mootness implicates subject-matter jurisdiction and may be considered sua sponte at any stage. United States v. Springer, 715 F.3d 535, 540 (4th Cir. 2013).

## III. DISCUSSION

### A. The release from BOP custody and the relief requested

Petitioner seeks a recalculation of time credits and sentence dates, an earlier transfer to prerelease custody, and an earlier release from his custodial sentence. (DE 1 at 5–6.) Those remedies were prospective when he filed his petition. But the BOP now reports that he has not been in its custody since April 24, 2026. The Court cannot retroactively place Petitioner in home confinement or a residential reentry center or direct an earlier release from BOP custody that has already ended. A determination that his historical credit calculation should have been different would amount to an advisory pronouncement unless some presently available relief could follow from it.

Petitioner states that his sentence includes three years of supervised release. (DE 1 at 2–3.) The Inmate Locator does not establish whether he is now serving that term. Even if he is, imprisonment and supervised release serve distinct purposes, and excess imprisonment does not automatically reduce a court-imposed term of supervised release. See United States v. Johnson, 529 U.S. 53, 58–60 (2000). The FSA permits time credits to accelerate transfer into prerelease custody or the commencement of supervised release. 18 U.S.C. §§ 3632(d)(4)(C), 3624(g)(3). Whether any unused credits may instead reduce the duration of supervised release after it begins presents a separate statutory question.

The courts of appeals have divided on whether unused FSA earned-time credits may reduce the duration of an already-commenced term of supervised release. Compare Gonzalez v. Herrera, 151 F.4th 1076, 1089 (9th Cir. 2025) (holding that unused credits may reduce the duration of supervised release), with Hargrove v. Healy, 155 F.4th 530, 533–36 (6th Cir. 2025), and Rivera-Perez v. Stover, 171 F.4th 196, 210 (2d Cir. 2026) (holding that such credits may accelerate the commencement of supervised release but cannot reduce its duration). In an unpublished decision, the Fourth Circuit likewise stated that FSA earned-time credits reduce a prisoner's term of imprisonment, not the duration of supervised release. See United States v. Malik, No. 24-7073, 2025 WL 973003, at *1 (4th Cir. Apr. 1, 2025) (per curiam); cf. Valladares v. Ray, 130 F.4th 74, 79 (4th Cir. 2025) (describing FSA credits as facilitating earlier placement in prerelease custody or supervised release, without addressing whether unused credits may shorten an already-commenced supervised-release term). Although Malik is unpublished and Valladares did not decide the

precise issue presented here, the Court finds the statutory interpretation adopted in Hargrove and Rivera-Perez persuasive. Section 3632(d)(4)(C) directs the BOP to transfer eligible prisoners into prerelease custody or supervised release, while § 3624(g)(3) permits an eligible prisoner to begin supervised release at an earlier date, not to exceed twelve months. Read together, these provisions authorize an earlier commencement of supervised release, not a reduction in the duration of the term imposed by the sentencing court. Accordingly, even assuming Petitioner earned unused FSA time credits, those credits do not provide a basis for shortening his supervised-release term through this § 2241 action.

The Fourth Circuit reached a closely analogous result in Palacio v. Sullivan, 814 F. App'x 774, 775 (4th Cir. 2020) (per curiam) (unpublished). Although Palacio concerned good-conduct credits under the First Step Act rather than the earned-time credits disputed here, the court dismissed a released prisoner's appeal as moot because excess time served in prison does not reduce a term of supervised release. Id. (citing United States v. Johnson, 529 U.S. 53, 59 (2000)). More recently, Benson v. Warden FCI Edgefield, 174 F.4th 348, 353–55 (4th Cir. 2026), rejected mootness where the petitioner remained incarcerated and recognition of disputed FSA credits could still affect his future prerelease custody or commencement of supervised release. Unlike the petitioner in Benson, McMurphy is no longer in BOP custody, and the petition's requested relief concerning earlier custodial placement or release can no longer be afforded. This conclusion does not address the sentencing court's authority to modify or terminate supervised release under 18 U.S.C. § 3583(e), which is distinct from the relief requested in this § 2241 proceeding.

Nor does Ketter compel a different result. That case involved a direct challenge to a criminal sentence that remained live because the sentencing court could alter the supervised-release component on remand. 908 F.3d at 65–66. McMurphy does not seek review of the sentence imposed by the Middle District of North Carolina; he challenges the BOP's execution of that sentence, and the Warden lacks authority to modify a judicially imposed term of supervised release. As Malik observed, modification or early termination of supervision may be sought from the sentencing court under 18 U.S.C. § 3583(e), but that is a separate remedy from the application of FSA credits by the BOP. 2025 WL 973003, at *1. The prospect of such discretionary relief does not make this administrative-credit challenge independently redressable here.

The Court does not hold that release from imprisonment always moots a habeas petition or that supervised release can never preserve a live dispute. A concrete and redressable continuing consequence may sustain jurisdiction. See Spencer v. Kemna, 523 U.S. 1, 7–8, 14–16 (1998). Here, however, the petition challenges the BOP's computation of prerelease credits and its administration of custodial placement. It does not challenge the underlying conviction or the term of supervised release imposed by the sentencing court. Petitioner has identified no ongoing consequence that the Warden could remedy through the relief sought in this § 2241 proceeding, and none is apparent from the record.

B. The Report and objections

The Magistrate Judge issued the Report while Petitioner remained incarcerated. His intervening departure from BOP custody supplies an independent,

threshold ground for disposition. The Court has considered the Report and conducted the review required by 28 U.S.C. § 636(b)(1) in light of Petitioner's objections. Because no live controversy remains, the Court does not decide whether exhaustion was required or excused, whether the BOP failed to respond to administrative grievances, or whether Petitioner was entitled to the specific credits and prerelease placement requested. Those issues cannot affect the relief now available in this proceeding.

Accordingly, the Court adopts the Report only insofar as it recommends dismissal without prejudice and without requiring Respondent to file a return. It does not adopt the exhaustion analysis, including the Report's characterization of exhaustion as jurisdictional. This disposition expresses no view on the correctness of Petitioner's underlying credit calculations or past placement decisions.

## IV. CONCLUSION

For the foregoing reasons, following de novo review of Petitioner's objections (DE 9), the Court ADOPTS IN PART and MODIFIES IN PART the Report and Recommendation (DE 6). The Court adopts the recommended disposition without prejudice and without requiring a return, but does not adopt its exhaustion rationale. Because the requested relief is no longer available, the petition presents no live Article III controversy.

Accordingly, the Petition for Writ of Habeas Corpus (DE 1) is DISMISSED WITHOUT PREJUDICE AS MOOT for lack of Article III jurisdiction. No return is required from Respondent. The Clerk is DIRECTED to enter judgment accordingly, close the case, and mail a copy of this Order and the judgment to Petitioner at his last address of record and to any updated address supplied to the Court.

IT IS SO ORDERED.

Joseph Dawson, III
United States District Judge

Florence, South Carolina
October 15, 2026